# Richmond.

## SUTTLE v. R. F. & P. R. R. Co.

### March 16, 1882.

1. EJECTMENT—*Legal title.*—The doctrine generally understood in Virginia is, that in ejectment the plaintiff must show a legal title in himself, and a present right of possession under it at the time of the commencement of the action.

2. IDEM—*Exceptions.*—To this doctrine some exceptions exist—*e. g.*, one in peaceable possession, and ousted by a stranger without title, may recover in ejectment on the strength of his mere previous possession; a tenant is estopped to deny the title of his landlord, etc.

3. LAW AND EQUITY COURTS.—In no State is the distinction between these courts and the principles governing them more rigidly adhered to than in this.

4. EJECTMENT—*Equitable defences.*—The doctrine that in ejectment the title in fee must prevail over a mere equitable interest, led to the statutes (Code of 1873, ch. 131, §§ 20, 21) allowing equitable defences against a naked legal title, where there is written evidence of the contract, and vendee has fully complied with all the terms, so as to entitle him in equity to a conveyance, without condition.

5. IDEM—*Equitable estoppel—Parol disclaimer.*—Where legal title is vested in one, no mere *parol* disclaimer can divest that title. It has been long settled here that disclaimer of a freehold can only be by deed or in a court of record. Case of *Bryan* v. *Hyre*, 1 Rob. Rep. 101, approved.

6. IDEM—*Survey.*—A survey excluding the land in litigation from the grantee's purchase is ineffectual to divest the freehold, which must remain in him until the execution of some instrument, or the occurrence of some act which can pass the freehold.

7. IDEM—*Parol evidence* to establish a case of equitable estoppel, and upon that to recover in ejectment, is inadmissible. The remedy, if any, is in equity.

Error to judgment of circuit court of Prince William county, in action of ejectment of J. B. T. Suttle *against* the

Richmond, Fredericksburg and Potomac Railroad Company. The object of the suit was to recover a tract of twenty-five acres of land lying in and along the Chappanannic creek in said county. Plaintiff based his right of recovery upon an equitable estoppel (established by *parol* evidence) to defendants, claiming title under an older deed from the same persons through whom plaintiff claimed. The facts of the case are fully stated in the opinion. Verdict and judgment for defendant. Writ of error and *supersedeas* awarded plaintiff by one of the judges of this court.

*Wm. H. Payne,* for appellant.

*H. R. Garden,* for appellee.

STAPLES, J., delivered the opinion of the court.

This is an action of ejectment, brought in the circuit court of Prince William county to recover five acres of marsh land in the possession of the Richmond, Fredericksburg and Potomac Railroad Company. Upon the trial in the court below, it appeared that Robert Guy, being the owner of a tract of land of two hundred and sixty-four acres in Prince William county, conveyed it to Anson Bangs, by deed bearing date August the 1st, 1871. On the 28th of May, 1872, Bangs and wife conveyed the same land to the Potomac Land and Iron Improvement Company, and the last-named grantee, by deed dated December 1st, 1877, in which Bangs united, conveyed to the defendant, the Richmond, Fredericksburg and Potomac Railroad Company, five acres of marsh land, part of the tract of two hundred and sixty-four acres. The operation and effect of this deed was to vest in the defendant the fee-simple title to the property in controversy. It seems, however, in October, 1877, the same Robert Guy conveyed to the plaintiff,

Suttle, twenty acres of marsh land, which was also part of the two hundred and sixty-four acre tract, and includes the five acres, the subject matter of litigation here.

This deed was of course ineffectual to convey anything to the plaintiff, the grantor having previously divested himself of all title by his deed to Bangs, under which the defendant claims. Upon the trial, however, the plaintiff conceding that such was the state of the title, offered evidence tending to show the following facts: "That Bangs, after his purchase from Guy, disclaimed all title to the twenty acres of marsh land, and declined to pay for it; that accordingly a survey was made, by which it was, by consent, excluded from his purchase; that the plaintiff, after he had bought the land from Guy, but before he had paid for it, went to Bangs and learned from him that he set up no claim to the marsh land, and thereupon the plaintiff paid the purchase money and had his deed recorded; and further, that the defendant company, at the time of its purchase, was apprised of all these transactions, and was therefore a participant in the fraud of Bangs."

The object of the plaintiff in offering this evidence, it is manifest, was to make out a case of equitable estoppel, and upon that to recover in the action of ejectment.

Upon the motion of the defendant the court excluded all of this testimony, and the sole inquiry here is, whether that ruling is correct.

In the first place, it is very clear that the deed from Guy to Bangs having vested in the latter the fee-simple title to the land in controversy, no mere parol disclaimer by Bangs could divest that title.

It has been long settled in this State that the disclaimer of a freehold can only be by deed or in a court of record. See the case of *Bryan* v. *Hyre, &c.*, 1st Rob. R. 101—a conclusive authority on this subject. It is equally clear that the alleged survey, by which the land was excluded from

Bangs' purchase, is also ineffectual to divest the title. Notwithstanding that survey, the title still remained in the grantee, and can only be divested out of him by an act or instrument sufficient to pass a freehold. In a case of disputed boundary the parties may agree upon a line, by way of compromise, and if they take and hold possession up to that line the requisite statutory period, the mere possession will in time ripen into a title. But no mere parol agreement to establish a boundary, and thus exclude from the operation of a deed land embraced therein, can divest, change, or affect the legal rights of the parties growing out of the deed itself.

These are familiar principles. If, as claimed, Bangs will thus be enabled to hold more land than he has actually paid for, the remedy is in equity, either to reform the deed or to obtain compensation for the same.

We come, then, to the question, Is it competent to set up an equitable title or estoppel *in pais* in an action of ejectment, and upon such right to base a recovery?

There is no doubt that at one time in England the court of king's bench exercised a species of equitable jurisdiction in the action of ejectment. It is said that Lord Mansfield, in a case before him, would not suffer a plaintiff to recover when he had stood by and seen the defendant, without objection, erect improvements upon the land. 7 Rob. Prac. 436.

In other cases, the legal estate of the trustee was not allowed to be set up against the *cestui que trust*, and a reversioner was permitted to recover his reversionary interest in ejectment subject to a lease and immediate right of possession in another. But these decisions have been long since overruled, and the doctrine in England is now well settled that ejectment rests upon a legal title and a right to the possession of the lands in dispute. *Feret* v. *Hill*, 15 Com. Bench R. 207; Adams on Ejectment, 43, 46; 2 Tucker, 187.

In this country, the decisions are conflicting. In some of the States no court of chancery exists to administer equitable relief. Pennsylvania is one of them. There ejectment is an equitable action, and is a substitute for a bill in equity, and whenever chancery would compel the execution of a conveyance or recovery, an ejectment will be directed. Tyler on Ejectment, 58; 7 Rob. Practice, 436.

In other States, even where the chancery courts exist, courts of law recognize and enforce equitable rights and claims which courts of equity recognize and enforce. See Bigelow on Estoppel, 636. But the great weight of authority in the United States is opposed to this doctrine, and is in conformity to the rule now recognized by the English courts. Tyler on Ejectment, 58, 74, 75, 504.

The supreme court of the United States, planting itself upon the principles of law and equity derived from England, has held, in a number of cases, that the action of ejectment cannot be maintained upon a mere equitable title, and that equitable interests must be sought in an equitable forum, where they can be adjudicated with a due regard to the rights of all concerned. *Robinson* v. *Campbell*, 3 Wheat. 212; *Fenn* v. *Holme*, 21 How. 481; *Carpenter* v. *Montgomery et al.*, 13 Wallace, 480.

In this State we have no decision upon the precise point, but we believe that in no other State is the distinction between the law and the equity courts, and the principles governing each, more rigidly adhered to than in Virginia. We do not mean to assert, as is sometimes broadly laid down, that with us ejectment is purely a legal action, and the right of possession essential to sustain it must, in all cases, be such as follows the legal title. Where, however, the title to the land in fee is the foundation upon which a recovery is predicated, the action partakes essentially of the nature of the old writ of right, is a substitute for it, and a recovery is conclusive upon the parties.

In such case, generally, if not universally, the party having the legal title must prevail against the holder of a mere equitable title or interest. It is very true that in *Hopkins & Watson* v. *Ward*, 6 Mun. 38, this court held that a *cestui que trust*, after the purposes of the deed have been satisfied, may maintain an ejectment upon a demise in his own name, although the legal estate is outstanding in the trustee. This decision rests upon the ground stated by Lord Mansfield in *Hart* v. *Knot*, Cowper Re. 46, that an estate in trust, merely for the benefit of the *cestui que trust*, shall not be set up against him. Anything, even a conveyance, shall rather be presumed; nor shall a man defend himself by any estate which makes part of the title of the plaintiff.

This court also held, in *Lee* v. *Tapscott*, 2 Wash. 276, that a person in peaceable possession of land, who is entered upon and ousted by a stranger without title, may recover in ejectment upon the strength of his mere previous possession. The reason is, that actual seizin is evidence of title against all the world, except the true owner, and the law will not permit that seizin to be wantonly invaded by one who himself has no title And so, generally, a tenant, let into possession under a lease, is estopped to deny the title of his landlord, and this estoppel may be relied on in ejectment. Here again the estoppel is founded on a permissive possession, and is admitted to be a departure from the strict rule of law, which requires that the plaintiff in ejectment must recover on the strength of his own title, and not on the weakness of his adversary. Taylor's Landlord and Tenant, p. 71; *Alderson* v. *Miller*, 15 Gratt. 279.

Subject to these exceptions, and perhaps to others, not now remembered, the doctrine, as generally understood in Virginia, is that in ejectment the plaintiff must show a legal title in himself, and a present right to the possession under it, at the time of the demise laid in the declaration. And so far was this carried, that until a statute was

passed to remedy the evil, a vendee in possession, who had paid every dollar of his purchase money, and had written evidence of his contract, was liable to be turned out of possession at any time by his vendor upon the mere legal title, and was at last compelled to make his defence in a court of equity. And the same rule prevailed to a great extent with respect to mortgages and deeds of trust, which had been satisfied. Code 1873, ch. 131, §§ 20, 21.

In *Davis* v. *Teays*, 3 Gratt. 283, Judge Baldwin said, that these statutes, in authorizing defences to be made in a court of law, were intended to prevent in cases sometimes occurring of a plain nature, an oppressive use being made of the mere legal title, against the substantial, though not the formal owner, invested with a written equitable right. The enactment was directed, not by a general but by a restricted policy, having in view on the one hand the preventing of gross injustice to the tenants in possession, and on the other guarding against the evils of a complicated and protracted litigation upon principles heretofore unknown to the legal forum. A few classes of cases were therefore selected and restrained within narrow limits by careful and cautious provisions.

The provisions of the statute referred to by Judge Baldwin, require that there shall be written evidence of the contract; that the vendee shall have fully complied with all its terms, so that he would be entitled to a conveyance of the legal title without any condition imposed; and moreover, he must have given sixty days' notice in writing, before the trial, of his intention to rely upon this defence.

These are the provisions allowing equitable defences in a court of law; so carefully guarded, however, as to prevent a protracted and complicated litigation involving equitable rights and interests in a mere legal forum. If, as now claimed, the holder of an equitable title may maintain or defend in ejectment, if a party in that action may

rely upon a mere equitable estoppel in *pais,* the statutes cited are altogether unnecessary, and this court has utterly misapprehended the grounds upon which they were enacted.

The numerous and complicated questions growing out of conflicting equities and estoppels in *pais,* relating to real estate, are a fruitful source of litigation, and are perhaps the most difficult and perplexing arising in the chancery courts. To establish a rule by which a jury may pass upon such questions is not only to confound all just distinctions, but to introduce infinite confusion and mischief. When one party has the legal title, and the other a superior equity, when a deed is obtained by fraud or other undue means, a court of equity may decree a conveyance of the title to the proper party—may, if necessary, order the payment of money, by way of compensation—may afford complete relief, by adjusting all the conflicting rights and interests of the parties concerned, and thus put an end to litigation. To assert that a jury is incompetent to act in such matters understandingly is to affirm that which commends itself to every thoughtful mind.

What has been here said relates only to transactions touching real estate, the title to which can pass only by deed, and can only be divested at law by some proceeding or instrument equally high and solemn.

For the reasons already stated, we are of opinion the circuit court very properly excluded the evidence in question, and the only remedy of the plaintiff, if any he has, is by a bill in equity.

The judgment must therefore be affirmed, without prejudice, however, to the plaintiff's right to resort to a court of equity.

JUDGMENT AFFIRMED.