𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BROOKS V. CLINTSMAN.

March 20, 1919.

1. ALTERATION OF INSTRUMENTS—*Deeds—Effect of Alteration by Consent of Parties.*—No *erasure* or *alteration* in a conveyance, nor even the *cancellation* thereof by mutual consent of the parties, can divest an estate already vested by operation of the deed; for that would be in conflict with the statute of conveyances, which declares that no estate of inheritance or freehold, or for a term of more than five years in lands, shall be conveyed unless by deed or will. Code of 1904, sec. 2413.

2. ESTOPPEL—*Equitable Estoppel—Case at Bar.*—A mother, a resident of North Dakota, by her son, purchased a farm in Virginia. The deed conveying the land to the mother was duly executed and acknowledged by the grantor and delivered to an agent of the grantor, with instruction to deliver the deed upon payment of the purchase money. Payment was made with the personal check of the mother and passed by her son to grantor's agent, who in turn delivered the deed to him. Shortly before the deed was admitted to record, the son, in the presence of grantor's agent, erased the name of his mother from the deed and inserted his own name as grantee therein, and then had the deed in its altered condition recorded. The mother permitted her son and his family to occupy the farm free of rent for a number of years. In a proceeding by the mother to assert her right to the tract of land against her son's widow and devisee, the widow invoked the doctrine of equitable estoppel. The son was fully advised of the state of the title to the land and the limitations upon his possession, and was induced by no declaration on the part of his mother to alter his position injuriously to himself.

*Held:* That the doctrine of equitable estoppel did not apply.

3. EQUITABLE ESTOPPEL.—The doctrine of equitable estoppel is not founded upon expectation; ordinarily it rests upon past or present considerations, and not on possible future events based upon opinion as to the supposed intention of another.

4. ESTOPPEL—*Equitable Estoppel—Certainty.*—An equitable estoppel relied on to conclude another's known right of property must be certain to every intent, and is not to be taken by argument or inference.

5. LACHES—*Loss of Evidence—Case at Bar.*—In the instant case it was contended that the mother had lost her right to maintain her suit in consequence of her laches in bringing it, by which her son's widow had been deprived of the benefit of the testimony of her late husband.

   *Held:* That as the record showed that the husband died within less than a year after inserting his own name in place of his mother's as grantee in the deed, there was no merit in this contention.

6. PAROL GIFT OF LAND—*Validity.*—In the instant case the evidence fell far short of establishing a parol gift of the land in controversy from the mother to the son which could have been enforced either by him or those claiming under him in a suit for specific performance. But since the Code of 1887, section 2413, took effect, no parol gift of land is enforceable.

Appeal from a decree of the Circuit Court of King and Queen county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Isaac Diggs* and *C. R. Sands,* for the appellant.

*J. D. Mitchell* and *Herbert I. Lewis,* for the appellee.

WHITTLE, P., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of King and Queen county in a suit in which appellee was plaintiff and appellant defendant. The history of the case is this:

On January 3, 1902, appellee, Mrs. M. L. Clintsman, who lived at Grand Fork, North Dakota, by her son, Leslie L. Clintsman (husband of appellant), who resided with his family in King and Queen county, negotiated the purchase of a farm containing 132¼ acres of land located in that county for $700. The deed conveying the land to appellee

93

was duly executed and acknowledged by the grantor, Alfred Bagby, and deposited with his brother-in-law and agent, R. N. Pollard, with instruction to deliver the deed upon payment of the purchase money. Payment was made with the personal check of appellee and passed by her son to Pollard, who in turn delivered the deed to him. The deed was not put to record until November 7, 1903, nearly two years after its execution and delivery. Shortly before it was admitted to record, Leslie L. Clintsman, in the presence of Mr. Pollard, erased the name of his mother from the deed and inserted his own name as grantee therein, and then had the deed in its altered condition recorded.

By permission of the mother the land was occupied by the son and his wife and children from the time of the purchase until his death (the exact date of which does not appear, but sometime between the making of his will, July 2, 1903, and February 2, 1904, when the will was admitted to probate). Testator by his will bequeathed to his wife, "all of my possessions and things now in my possession and name * * * hoping if she outlives me, that she will look after my aged father and also if she can in any way assist my mother, that she will do so." The will does not in terms undertake to devise the land, nor is it shown whether his name was substituted for that of his mother in the deed before or after he made his will. Leslie L. Clintsman's father and mother had been divorced, and the father lived with the son on the land from the date of the purchase until the son's death. Afterwards, upon the alleged ground that the father was not a suitable person for her children to be associated with, appellant refused to permit him to remain in the home. And, a year or two after the death of her husband, she married a second time.

Mr. Pollard gave his deposition in the case about twelve years after the alteration of the deed, and says he thinks the son at that time produced a letter from his mother

authorizing him to make the change.    Appellant in **her**
answer to the bill also states that there was such a letter,
but that it had been lost.    She and others likewise testi-
fied to alleged admissions by appellee that she intended
the property for her son.    Mr. Pollard, as a mutual friend,
seems to have endeavored to adjust the differences between
appellant and appellee; and in letters written by appellee
to him about that period she manifested the tenderest de-
votion for the memory of her son, and absolved him from
any intentional impropriety in the alteration of the deed.
It is not clearly shown when Mrs. Clintsman first learned
of the alteration.

Upon the case thus made the circuit court was of opinion
that the substitution by the son of his name for that of
appellee as grantee in the deed was a void act and invested
him with no right or title to the land in controversy, and
decreed accordingly.    From that decree this appeal was
allowed.

[1]    The controlling principle in cases of this class is
succinctly stated in 2 Minor on Real Property, sec. 1190:
"No *erasure* or *alteration* in a conveyance, nor even the
*cancellation* thereof by mutual consent of the parties, can
divest an estate already vested by operation of the deed;
for that would be in conflict with the statute of convey-
ances, which declares that no estate of inheritance or free-
hold, or for a term of more than five years in lands, shall
be conveyed unless by deed or will."    1 Va. Code, 1904,
sec. 2413; 2 Min. Inst. 738.

The same doctrine was announced by this court in *Suttle*
v. *R. F. & P. R. Co.*, 76 Va. 284, 286, as follows:    "It has
been long settled in this State that the disclaimer of a
freehold can only be by deed or in a court of record.
See the case of *Bryan* v. *Hyre*, 1 Rob. R. (40 Va.) 101
(39 Am. Dec. 246)—a conclusive authority on the sub-
ject."

[2, 3] Appellant also invokes the doctrine of equitable estoppel to reverse the decree. It is true that appellee permitted her son and his family to occupy her farm free of rent for a number of years; yet the doctrine of equitable estoppel cannot be rested alone upon that foundation. The son was fully advised of the state of the title to the land and the limitations upon his possession, and was induced by no declaration on her part to alter his position injuriously to himself. It may be that he was disappointed of the hope that some day his mother would bestow the property upon him, but the doctrine is not founded upon expectation; ordinarily it rests upon past or present considerations, and not on possible future events based upon opinion as to the supposed intention of another.

In the case of *Newport News, etc., Co.* v. *Lake,* 101 Va. 334, 343-344, 43 S. E. 566, 569, it is said: "Experience has shown that in controversies involving title to real estate, it is far safer to rely on written muniments of title than 'the slippery memory of man.' Hence parol defeasances are not favored—a mere equitable estoppel constitutes no defense to an action of ejectment, (*Haney* v. *Breeden,* 100 Va. 781, 42 S. E. 916) ; and when such defense is set up on the equity side of the court, it must be distinctly charged and clearly proved."

[4] It is a familiar rule that an equitable estoppel relied on to conclude another's known right of property must be certain to every intent, and is not to be taken by argument or inference.

It is quite apparent that the claim of appellant to the land in controversy falls far short of the requirement of the equitable doctrine relied on, and cannot be maintained.

[5] The point likewise is stressed that Mrs. Clintsman has lost her right to maintain this suit in consequence of her laches in bringing it, by which appellant has been deprived of the benefit of the testimony of her late husband,

Leslie L. Clintsman; that he had acted for his mother and himself throughout the transaction, and, if living, his evidence would be of the utmost importance upon the question involved.

This contention is demonstrably without merit. The record shows that Leslie L. Clintsman died within less than a year after inserting his own name in place of his mother's as the grantee in the deed. Appellant, of course, had no cause of action until after the alteration had been made; and, therefore, the loss of his evidence by death a few months later can neither be imputed to lapse of time nor to the laches of appellee in bringing her suit. As we have seen, she lived in a distant State, and the bill charges that "complainant instructed her son, the said Leslie L. Clintsman, to have the tract of land conveyed to her, and she gave him $700.00 to pay for the same; and having implicit confidence in her son * * * believed that he had obeyed her instructions until several months ago * * * * " when she was reliably informed of the alteration of the deed. It is true that this allegation is controverted by the answer of appellant and by her testimony; but, however that may be, she suffered no loss of evidence from delay in bringing the suit.

[6] Finally, in the absence of the statutory provision on the subject, upon elementary principles, the evidence falls far short of establishing a parol gift of the land from the mother to the son which could have been enforced either by him or those claiming under him in a suit for specific performance. But since the Code of 1887 took effect, no parol gift of land is enforcible. Section 2413 provides, "nor shall any right to a conveyance of any such estate or term in land" (an estate of inheritance or freehold, or term of more than five years) "accrue to the donee of the land or those claiming under him, under a gift or a promise of gift of the same hereafter made and not in

writing, although such gift or promise be followed by possession thereunder and improvement of the land by the donee or those claiming under him."

The latest case on this subject is *Wohlford* v. *Wohlford,* 121 Va. 699.

We find no error in the decree of the circuit court, and it must be affirmed.

*Affirmed.*

SIMS, J., dissenting:

This is a suit in equity brought by the appellee in October, 1915, to have herself declared to be the grantee in a deed which had been recorded over twelve years as a deed to her son as the grantee thereof, and under which the exclusive adverse possession of the real estate conveyed thereby had been taken by the son and held for such period before such suit by the son, the appellant, his devisee, claiming title to the same in fee and so occupying and using such real estate during the whole of such time; and to have such deed set aside and to have a parol trust declared to exist under such deed in favor of the appellee over twelve years after the death of her son.

The appellee in her bill seeks to explain her long acquiescence in the *status* aforesaid by the allegation that she was the grantee named in said deed as it was originally executed and delivered to her son for her and that before it was recorded, the son, without the knowledge or consent of the appellee has his name substituted in the deed as grantee and then recorded it; and that the appellee had no knowledge that the son was named as grantee in the deed until a short time before the suit was instituted. The proof in the case is very clear that the real estate was purchased by the son and was paid for by the mother, the appellee, as a gift to her son. That the deed was dated

January 3, 1902. That, as the grantor in the deed, from whom the real estate was purchased, understood, the deed was to be made, however, to the mother. That the grantor accordingly inserted the name of *L. M.* Clintsman in the deed as grantee, whom he thought to be the appellee, and delivered the deed to the son in Virginia in 1902—the appellant being in and a resident of North Dakota. That as a matter of fact *L. M.* Clintsman was not the name of appellee, *M. L.* Clintsman being her correct name. Whether this error in the deed was noticed at the time by the son or reported to the mother, or whether the deed in that form was acceptable to the mother, or was accepted by her, is not disclosed by the evidence. The original direction that the deed be made to the appellee as grantee came to the grantor through the son. Just when and why the appellee decided to change this plan and make the son the grantee is a subject of conflict in the evidence in the record, upon which the testimony of the son, if he were living, would throw valuable light. But at any rate, the preponderance of the evidence in the record clearly and distinctly shows that the erasure of the name of *L. M.* Clintsman from said deed and the insertion therein of the name of the son as grantee was done by the son shortly before the deed was recorded by him; that the son at that time had in his possession a letter from his mother, the appellee, with a message or direction to Mr. Pollard, authorizing him to do this; that this letter was presented to Mr. Pollard, the person acting as attorney or agent for the grantor in said deed, as evidencing the authority of the son to make this change, and that the grantor assented such change through Mr. Pollard (as must be inferred from the record in this case) and the deed was accordingly recorded by the son in 1903, as a deed to himself.

A few months thereafter the son died leaving a will, which was probated on February 2, 1904, which devised

"all of my possessions, and things now in my possession and name to Ida R. Clintsman " (the appellant). The will also continued with the following provisions, "hoping that if she outlives me that she will look after my aged father and also if she can in any way assist my mother, that she will do so." This will is dated July 2, 1903, but, of course, spoke as of the death of the son, and said real estate, being in the possession of the son at the time the will was executed and both in his possession and name when he died, was intended by him to pass to appellant thereunder. The son, from the time he received the letter aforesaid from his mother until his death in 1904, believed and was induced by the mother to believe that it would so pass. He thus died feeling secure in the belief, induced by the mother, that the provisions of his will for his widow, the appellant, would stand. The mother did not question the sufficiency or the validity of the authority of said letter in the life time of her son. If she had done so, he might have established the validity of his action under such authority by his testimony. Upon his death the appellant thought that the authority of the letter had been validly exercised and that the real estate passed under the will. Following the death of the son the appellee knew of this will and acquiesced in the exclusive adverse possession and enjoyment of said real estate by appellant under the will, from the death of the son, for over twelve years before this suit was brought, and for nearly twelve years before any question was raised by appellee in the premises. And while there is no express proof in the record of the precise fact that appellee knew that her son acted on her letter authorizing him to change the name of the grantee in said deed as aforesaid, her knowledge of said will and subsequent acquiescence in the holding of the possession aforesaid by the appellant thereunder, raises a strong inference that she had knowledge that such change of names had been so made prior to the death of her son.

And the question which was finally raised by appellee, about a year before the suit was brought, was due to the fact that appellant had refused to allow the father of her deceased husband to continue to live on said real estate.

The evidence makes it clear that this was the moving cause of the suit and that but for that occurrence the appellee would have continued to have acquiesced in said *status* of said property.

Where the merits may be of the controversy over the right of said father to live on said real estate is a problem not involved in this suit, and it would serve no useful purpose to set forth here the details of that controversy. It is sufficient to say that the evidence discloses that prior to such controversy the appellee had acquiesced in the *status quo ante* aforesaid and would have continued to so acquiesce in future but for such controversy. The record shows that the latter is the real controversy between the parties to this suit, although the bill asserts a wholly different cause of action.

Now I have no difference with the majority opinion on the subject of the law therein laid down. If the deed in question was ever *delivered,* so as to have become an *executed contract* prior to the change of name of the grantee therein, then the legal title to the real estate thereby conveyed would have become vested in the grantee first named in the deed, if such grantee had been correctly named therein. 2 Minor on Real Property, sec. 1190; 2 Pollard's Code 1904, sec. 2413; 2 Minor's Inst. 738; *Suttle* v. *R. F. & P. R. R. Co.,* 76 Va. 284, 286; *Nelson* v. *Triplett,* 81 Va. 237; *Bryan* v. *Hyre,* 40 Va. (1 Rob.) 101, 39 Am. Dec. 246. And, at law, the grantee could not be subsequently divested of the legal title except by matter of record or by deed or will. In equity indeed, the situation might be different. I agree with the majority opinion, however, in the view that in the instant case the facts as disclosed by

94

the record are not such as to make the doctrine of estoppel applicable so as to produce a different situation. But in the case before us the name in the deed was not the name of the appellee. Hence, at law, the legal title did not thus pass to her, even if the deed had been delivered. In equity, it is true, she would be held to be entitled to claim such title, as she was the person intended to be the grantee, if the fact was that the deed was delivered in the legal sense of that term. But the appellee, in such case, would have to seek the aid of a court of equity in order to obtain the benefit of such title. Should that court grant her such relief in view of her laches, under the circumstances of this case? I think not, for the reasons presently to be more particularly pointed out.

But suppose the case were regarded as if the name of the appellee had been correctly written in the deed so that by the operation of the deed the appellee would have become vested with the legal title to the real estate upon its delivery; still, the question of fact would remain, was it ever delivered in that form? If not, and if it remained undelivered when the alteration above named was made, it was still an *executory contract,* and the alteration aforesaid, if made with the consent of the appellee as well as of the grantor in the deed, was valid, and the deed took effect as a new execution of it as of the time of such alteration and delivery of the deed to the grantee then named therein, the son aforesaid. *Cleaton* v. *Chambliss,* 27 Va. (6 Rand.) 92; *Speake* v. *United States,* 9 Cranch 27, 37, 3 L. Ed. 645; 2 Rob. (New) Pr. p. 26. In such case the gift of the mother to the son of the real estate aforesaid would have become a gift completely executed, and hence as binding upon the mother, the appellee, as if it had been a purchase from her by the son for valuable consideration. Now since the son was acting for the mother, the appellee, as well as for himself throughout this transaction, it is manifest that

his testimony would be of the utmost importance upon the question of fact involved, namely, upon the question of whether the deed was ever delivered in its first form? By the laches and acquiescences aforesaid of the appellee the appellant has lost the evidence of said son, by reason of his death. Further: The testimony of Mr. Pollard, a witness for the appellant, who was the attorney and agent for the grantor in said deed in charge of the matter of the first passing of the deed to the hands of the son and who acted for the grantor in the subsequent transaction aforesaid when the name of the grantee was changed as aforesaid, was rendered to a considerable degree vague and indefinite by the lapse of time between the original occurrences and the giving of his deposition, as is clearly shown by his testimony.

As said in this court, speaking through Judge Staples in *Harrison* v. *Gibson*, 64 Va. (23 Gratt.) 212, and quoted with approval by this court, speaking through Judge Lewis, P., in *Hatcher* v. *Hall*, 77 Va. at p. 576: "If from the delay which has taken place, it is manifest * * * that the original transactions have become obscured by time and the loss of evidence and the death of parties, so as to render it difficult to do justice, the court will not relieve the plaintiff. If under the circumstances of the case, it is too late to ascertain the merits of the controversy, the court will not interfere, whatever may have been the original justice of the claim." See also 1 Barton's Chy. Pr., 90, and cases cited.

Further: No particular lapse of time is necessary to raise in equity the bar of laches. It rests upon the principle that nothing can call courts of equity into activity "but conscience, good faith and reasonable diligence; and where these are wanting, the court is passive and does nothing." *Idem*, p. 91. It may be that if the appellee had instituted this suit promptly following the death of her son, which

occurred some time in 1904, and she had frankly explained the situation of the title at the time of her letter, had admitted the writing of it, and had satisfactorily accounted for her delay in not bringing the suit sooner, the doctrine of laches might not have applied. But the situation before us is different. We find that when she does, after long years of delay, bring her suit she, for one thing, testifies therein positively denying that she ever wrote the letter. The truth of such testimony is seriously impeached by one other letter which she had written, if not in other letters in the record.

She testified in her deposition, given on August 10, 1916, on this subject as follows:

"Ques. 4. State if you ever wrote Mr. R. N. Pollard a letter instructing him to erase your name in the deed and insert the name of Leslie L. Clintsman?

"A. I never did.

"Ques. 5. State if you ever sent a message to Mr. R. N. Pollard to erase your name and insert the name of Leslie L. Clintsman instead?

"A. I never did."

In a letter to the appellant, however, dated November 22, 1915, appellee wrote on this subject as follows: "Yes, I told or wrote Leslie that I didn't care, but I never asked him if it had been done, there is no blame attached to Leslie or any one. *   *   *" For another thing, she is disingenious as to her real feeling of aggrievance against the appellant. She alleges one cause of action when in truth her actual cause of action was a wholly different one. In short, she does not come into a court of equity clothed with that conscience and good faith which can alone appeal to it, and, moreover, her long delay since the death of the son has weakened the character of testimony on which alone appellant was left to rely in the premises after the death of her husband, the son of appellant aforesaid.

I think, therefore, upon the whole case, that the appellant has so long acquiesced in the *status* which her bill seeks to disturb, that, under the circumstances of this case, she is barred in equity by her laches; that it is now too late for her to obtain in that forum the relief which she seeks, and, hence, that the decree under review is erroneous, in that it granted such relief, and should be reversed.

NOTE.—In the petition of Ida R. Brooks for a rehearing in the above case, our attention is called to a mistake in the printed record of the date of the probate of the will of Leslie L. Clintsman, deceased. The date as printed was February 2, 1904, instead of February 2, 1914, the correct date. From that circumstance the argument is again stressed that the right to maintain the suit was barred by laches. In the majority opinion, it is true, the question of laches was discussed from the standpoint of the former date; yet, it by no means constitutes a bar to the suit when considered from the correct date. Even if it were conceded that a gift of the land was intended, the case would still be controlled by section 2413 of the Code, abolishing the enforcibility of parol gifts of estates of inheritance or freehold, or a term for more than five years, in land "although * * * followed by possession thereunder and improvement of the land by the donee or those claiming under him." The history and expressed purpose of the section shows a legislative policy to deny the right to enforce parol gifts of such estates.

This statute was recently considered and relief refused in a much stronger case for relief on the facts than those presented in this record *Wohlford* v. *Wohlford*, 121 Va. 699, 93 S. E. 629.

*Rehearing denied.*