## Wytheville.

### ALONZA DOBBS v. HARRY A. DOBBS.

#### June 14, 1928.

Argued and submitted before Judge Holt took his seat.

1. EQUITY—*Pleadings—Questions not Raised by the Pleadings—Case at Bar.*—In the instant case, a suit by a father against his son to recover title to a tract of land, while the defendant alleged in his answer that he was a *bona fide* purchaser for value and without notice, he introduced evidence by which he endeavored to claim the land as a gift from his father.

   *Held:* That the question of the land being a gift from the father to the son not being involved in the pleadings, all evidence tending to show such gift was irrelevant and immaterial and could not be considered. Parties must win or lose upon the case made in the pleadings.

2. EQUITY—*Pleadings—Questions not Raised by the Pleadings.*—A court of equity has not authority to decree upon a case not made by the pleadings.

3. MORTGAGES AND DEEDS OF TRUST—*Absolute Deed as Mortgage—Suit by Grantor for Reconveyance—Case at Bar.*—In the instant case the entire controversy revolved around a deed from one L. and his wife to defendant. Plaintiff had deeded the property to L. and his wife by absolute deed, which, however, in fact was a mortgage to secure a debt of plaintiff's to L. The pleadings put the parties at issue, and they went to trial upon one question: Was defendant, a son of plaintiff's, a *bona fide* purchaser for value and without notice of plaintiff's rights? L. and his wife never claimed to own the property in fee simple. L. was dead but his wife testified that L. always wanted the plaintiff to have his property back. A disinterested witness testified to a conversation between the father and son in which it was agreed that the son should take the land and when his father came out of prison he would turn the land over to him.

   *Held:* That the plaintiff having knowledge of the fact that the deed under which L. held the land was in fact only a mortgage, could take no better title to the land than was vested in L., his grantor. Therefore, defendant did not hold the land in fee simple, but in trust for his father.

4. Equity—*Pleadings—Question not Put in Issue by the Pleadings—Case at Bar.*—In a suit by a father against his son to compel the son to convey certain land to his father, while no reference was made thereto in the pleadings, the defendant contended in his brief that the father conveyed the land by deed absolute on its face though intended as a mortgage, in order to hinder, delay and defraud the Commonwealth in the collection of fines due it by the father, and therefore he came into court with unclean hands.

　　*Held:* That a sufficient answer to the son's contention was that the question of the alleged fraudulent purpose of the father was not put in issue by the pleadings.

5. Equity—*Pleadings—Decree Upon a Case not made by the Pleadings—Fraud.*—A court of equity can only decree upon a case made by the pleadings; and this is especially true where fraud is relied on as established by the proof. Fraud must be distinctly alleged in the pleadings, otherwise it cannot be the basis of a decree.

Appeal from a decree of the Circuit Court of Buckingham county. Decree for defendant. Complainant appeals.

*Reversed and remanded.*

The opinion states the case.

*Hubard & Boatwright*, for the appellant.

*G. M. Rogers* and *Aubrey E. Strode*, for the appellee.

West, J., delivered the opinion of the court.

On October 3, 1914, Alonza Dobbs conveyed to John B. Boatright his farm in Buckingham county, Virginia, containing 143 acres. The deed, on its face, was an absolute conveyance, but was intended as a mortgage to secure the payment of a fee of $200 to John B. Boatright, his attorney, and indemnify him against loss as surety on his bail bond. Dobbs was tried, in November, 1914, under three indictments charging violations of the prohibition law, convicted

and sentenced to pay a fine of $100 and costs in each case.

On November 6, 1914, John B. Boatright and wife and Annie Dobbs, wife of Alonza Dobbs, conveyed the 143 acre tract of land to M. L. Layne, who paid off the debt due Boatright. This deed was likewise absolute on its face, but was intended as a mortgage to secure the payment of the amount which Layne had advanced to settle with Boatright. Layne held the legal title to the land until 1923. On October 19, 1923, M. L. Layne and Mary L. Layne, his wife, conveyed the 143 acre tract to Harry A. Dobbs, in consideration of one hundred and fifty dollars and other valuable consideration, not described in the deed. The deed is also absolute on its face but appellant contends it was intended as a mortgage to secure the payment of the amount paid to Layne by Harry A. Dobbs, while Harry A. Dobbs claims he is a purchaser for value and without notice and has an absolute fee simple title to the property.

Harry A. Dobbs moved upon and took complete charge of the premises and when Alonza Dobbs, his father, completed his term in jail he returned to the farm and resided with his son.

While Alonza was serving his sentence in jail, Harry A. Dobbs sold nineteen acres of the farm, without the knowledge or consent of his father, to Ralfe Rush for $239, more than twice the amount which, according to the testimony of some of the witnesses, he paid for the entire farm. In addition, Harry A. Dobbs cut and sold from the farm several hundred dollars worth of timber.

In 1925, Harry refused, upon request, to deed the land back to his father, and in March, 1926, the father, Alonza Dobbs, filed his bill in the instant case setting

forth the several conveyances of the land as herein-above stated, and alleging that the land was deeded to the son by Layne and wife, with the express understanding that it would be deeded back to the father as soon as the balance of the debt due thereon was paid; that the son, Harry A. Dobbs, had refused to deed the land back to his father, and praying for a decree compelling the son to convey the land to the complainant and account for the rents and profits thereof, and enjoining the defendant from selling or disposing of the land or the timber thereon.

The defendant demurred to and answered the bill, in his answer he alleges that he "holds the said land under a deed from said Layne as a purchaser for value and without notice, being the owner of said land in fee simple without any right, equity or title therein belonging to the said complainant, who conveyed away his said land more than ten years ago and never asserted any claim thereto against your respondent until complainant quarreled with respondent's wife recently, until which time complainant always recognized the completeness of the title of respondent to the said land under the deed from Layne."

On May 12, 1926, a decree was entered enjoining and restraining Harry A. Dobbs from cutting or removing any timber from the land until the last of the October term of the court.

On October 19, 1926, the case being fully heard upon the pleadings and the evidence, a decree was entered adjudging that "the land involved in this suit, conveyed to Harry A. Dobbs by deed from M. L. Layne and wife, bearing date on October 19, 1923, is not held in trust by the defendant for the complainant, Alonza Dobbs," dissolving the injunction and dismissing the bill, and

striking the case from the docket. To that decree this appeal was allowed.

Neither John B. Boatright nor M. L. Layne ever claimed a fee simple title to the land in question. Each of them agreed that the deed under which he held was a mortgage given to secure the debt due him by Alonza Dobbs.

The entire controversy revolves around the deed of October 19, 1923, from M. L. Layne and wife to Harry A. Dobbs.

The pleadings put the parties at issue, and they went to trial upon one question: Was Harry A. Dobbs a *bona fide* purchaser for value and without notice of the plaintiff's rights, and the owner of the land in fee simple?

While the defendant (appellee) alleges in his answer that he is a *bona fide* purchaser for value and without notice, he introduced evidence by which he endeavored to claim the land as a gift from his father.

[1] The parties must win or lose upon the case made in the pleadings. The question of the land being a gift from the father to the son not being involved in the pleadings, all evidence tending to show such gift is irrelevant and immaterial and will not be considered here.

[2] A court of equity has no authority to decree upon a case not made by the pleadings. *Fleenor* v. *Hensley,* 121 Va. 374, 93 S. E. 582.

It clearly appears from the evidence that Harry A. Dobbs had full knowledge that the deed under which Layne held title, and the deed from Layne and wife to him, while absolute in form, were intended as mortgages to secure the payment of certain debts due to the grantees therein named, respectively. He actually paid the debt due Layne.

M. L. Layne died before the suit was instituted. He had held the legal title to the land for seven years, during which time he never went upon it or exercised any authority over it. When Harry A. Dobbs came to see him about conveying the land to him, Layne was very ill and would not sign the deed in favor of Harry A. Dobbs until he was assured that Alonza Dobbs would get the land back.

Mrs. Layne, wife of M. L. Layne, testified that her husband "wanted Mr. Dobbs to have his place back, mentioned it lots of times. Wanted to get it off his mind. His health was so bad." Upon her further examination she testified as follows:

"Q. Did he deed this property to Harry Dobbs for the purpose of his keeping it?

"A. No, sir. He deeded it to him for the purpose of Alonza Dobbs getting it back as soon as Alonza Dobbs got out of trouble so that he could own it himself.

"Q. Do you know whether or not Alonza Dobbs lived on this property while it was deeded to your husband?

"A. Yes, sir.

"Q. Did your husband ever undertake to manage or direct the operation of the place?

"A. Not in any way.

"Q. Please state whether or not you and your husband would have deeded this property to anyone at all without the direction of Alonza Dobbs?

"A. No, sir."

Mrs. Layne testified further as follows:

"Q. Do you know anything about the circumstances under which he deeded it away?

"A. Well his son came and told him to make a deed to him until he could get out. Mr. Layne was sick in bed. To make the deed to him until he could own it * * *."

"Q. Did I understand you to say that Harry Dobbs came to your husband while he was sick and shortly before his death, and stated to your husband that Alonza Dobbs desired your husband to convey the property to Harry Dobbs for the purpose of holding the property for Alonza Dobbs?

"A. Yes, sir."

When Harry visited his father in Buckingham jail, the day before he went to see Mr. Layne, he talked with his father in the presence and hearing of Henry Wells, an absolutely disinterested witness, who testified that it was agreed that the son should take the land in and when his father came back he was to turn the land over to his father and make him a deed to same.

[3] Harry A. Dobbs having knowledge of the fact that the deed under which Layne held the land was in fact only a mortgage to secure the payment of a debt due Layne by Alonza Dobbs, Harry A. Dobbs could take no better title to the land than was vested in Layne, his grantor. It follows, therefore, that Harry A. Dobbs does not hold a fee simple title to the land.

When he paid the debt due Layne, he held the title to the land as security for the amount advanced by him, and when that was paid he held the land in trust for Alonza Dobbs, his father.

[4] While no reference is made thereto in the pleadings, the defendant in error contends in his brief that Alonza Dobbs conveyed the land by deed absolute on its face though intended as a mortgage, in order to hinder, delay and defraud the Commonwealth in the collection of the fines due it by him; that therefore he comes in court with unclean hands which renders the court powerless to grant him any relief.

[5] A sufficient answer to this contention is that the

question of the alleged fraudulent purpose of Alonza Dobbs was not put in issue by the pleadings. A similar question was passed upon by the court in *Fleenor* v. *Hensley,* 121 Va. 374, 93 S. E. 584, where it is held that a court of equity can only decree upon a case made by the pleadings; that this is specially true, "where fraud is relied on as established by the proof. It must be distinctly alleged in the pleadings, otherwise it cannot be the basis of any decree. *Gregory* v. *Peoples,* 80 Va. 355; *Wells [Welfley]* v. *Shenandoah,* 83 Va. 768, 3 S. E. 376; *University of Virginia* v. *Snyder,* 100 Va. 567, 42 S. E. 337; *Saunders* v. *Parrish,* 86 Va. 592, 10 S. E. 748; *Wheby* v. *Moir,* 102 Va. 875, 47 S. E. 1005."

For the foregoing reasons, the decree complained of will be reversed, and a decree will be entered here adjudging that the land which was conveyed to Harry A. Dobbs by M. L. Layne and wife by deed dated October 19, 1923, is held in trust by him for the complainant, Alonza Dobbs, and requiring Harry A. Dobbs to convey said land to the complainant and account for the rents and profits of the land and for the timber cut and sold therefrom. The cause will be remanded to the circuit court for further proceedings, in harmony with the views herein expressed.

*Reversed and remanded.*