## Richmond.

### Dudley and Others v. Minor's Executor.

December 4, 1902.

1. Fraudulent Misrepresentations—*Facts—Opinions.*—A misrepresentation, the falsity of which will afford a ground of action for damages or a bill for the rescission of a contract, must be of an existing fact, and not the mere expression of an opinion. It must have been made for the purpose of procuring the contract, must be material and untrue, and the party to whom it was made must have relied upon it and been induced by it to enter into the contract. An expressed intention to build a street railway or a hotel is not the statement of a fact, but the expression of an opinion.

2. Appeal and Error—*Record—Failure to Disclose Error.*—If the record fails to disclose error committed by the trial court, its action will be presumed to be correct.

3. Chancery Practice—*Fraud—Lien for Purchase Money—Personal Decree—Collaterals—Suit on Only Part of Collaterals.*—On a bill filed by the purchaser of a lot, to enjoin a holder for value of negotiable notes given for deferred payments from collecting the same, on the ground of fraud in the procurement of the contract, if the proof fails to establish the fraud, but shows that the holder's debt exceeds the amount of the notes, the court, having all the parties before it, may at once render a personal decree against the makers for the amount of their notes, before enforcing a deed of trust given for their security, and without taking an account of the amount due the holder, although the notes were transferred, along with those of others, as collateral security for a debt. No equity exists between the makers of the different sets of notes. The holder may proceed to judgment against one set irrespective of the course taken as to others.

Appeal from a decree of the Circuit Court of Roanoke county, pronounced at its October term, 1899, in a suit in chan-

cery, wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Green & Miller,* for the appellants.

*Moomaw & Woods,* for the appellees.

HARRISON, J., delivered the opinion of the court.

It appears from this record that the Salem Development Company, like many other such enterprises of its day, was engaged, among other things, in buying real estate in and about the town of Salem, Va., and laying the same off into streets, avenues, and lots, for which at the time there appears to have been an unprecedented demand. On the 12th day of September, 1890, the company made second sale of lots at public auction, when the appellants, O. W. Dudley, J. A. Craddock, G. W. Bethel and Eugene Withers became the purchasers of eight lots, at the aggregate price of $9,492.50, one-third of which was to be paid in cash, and the residue in two instalments at one and two years. The deferred payments were evidenced by negotiable notes executed by the purchasers to the Salem Development Company, and payable at the Farmers' National Bank of Salem, Va. The notes of the appellants, payable two years after date, aggregating $3,164.14, passed finally, for full value, into the hands of A. W. Minor, of the State of New York, who held them at the time of his death, when they passed into the hands of his executor, the appellee, A. Minor Wellman. The appellee brought suit at law in the Circuit Court of Roanoke against the makers to enforce payment of these notes that had come to his hands as executor, and thereupon the bill in this case was filed by the appellants, praying for an injunction to restrain the appellee from proceeding to judgment against them upon the notes,

upon the ground that they were induced to buy the lots from the Salem Development Company, and to execute the notes for the deferred payments thereon by fraudulent representations made to them by the company before, and at the time, of their purchase. A temporary injunction was granted, which was subsequently dissolved by decree of October, 1899. From this last-mentioned decree the cause was brought by appeal to this court.

The representations relied on by the appellants are set forth in the petition for appeal as follows: That at the sale of lots on the 12th of September, 1890, A. M. Bowman, the president of the Salem Development Company, speaking for it, "proclaimed to the assembled bidders, among whom were petitioners, the following distinct representations of fact:

"(1) That he had a letter from Mr. Fries, President of the Southern Construction Company, assuring him that the Roanoke & Southern Railroad would enter Salem through the lands of the Salem Development Company; that the construction of said railroad would begin at once, and that its building was an assured fact.

"(2) That a hotel would be constructed by the Salem Development Company on a certain block of lots at the cost of $50,000.

"(3) That an electric railway would be built through the company's property, and that bond had been given to complete it within two years; and

"(4) That certain other manufactories had been secured to be located on the property, and would be constructed at once."

It is further stated that, in order to encourage petitioners to bid on the lots, President Bowman declared that, unless these representations were carried out, purchasers of lots would not be required to pay their deferred instalments of purchase money.

This court has so repeatedly, in recent years, laid down the rules of law by which it must be governed in disposing of this

class of cases that it hardly seems necessary to do more than cite a few of the cases bearing upon, and, in our view, conclusive of the questions raised by this appeal.

The doctrine is well settled that a misrepresentation, the falsity of which will afford a ground of action for damages, or a bill for the rescission of a contract, must be as to an existing fact. It must be an affirmative statement, or affirmation of some fact, in contradistinction to a mere expression of opinion, which ordinarily is not presumed to deceive or mislead. The statements must have been made for the purpose of procuring the contract. They must be material. They must be untrue, and the party to whom they were made must have relied upon them, and been induced by them to enter into the contract. *Wilson* v. *Carpenter*, 91 Va. 183; *Watkins* v. *West Wytheville, etc. Co.*, 92 Va. 1; *Max Meadows, etc. Co.* v. *Brady*, 92 Va. 71; *Orr* v. *Goodloe*, 93 Va. 263; *Grosh* v. *Ivanhoe Land Co.*, 95 Va. 161; *Owens* v. *Boyd Land Co.*, 95 Va. 560. In the light of these authorities we will now proceed to a consideration of the evidence touching the several representations relied on as furnishing ground for affording appellants relief from their obligations as purchasers of the lots in question.

The first is that A. M. Bowman stated that he had a letter from Mr. Fries, assuring him that the Roanoke and Southern railroad would enter Salem through the lands of the company, and that its building was an assured fact. The evidence does not sustain this contention. The letter referred to from Fries to Bowman is as follows: "I write to say hurriedly that the contract arranged to-day with the Railway and Construction Company to build to Roanoke does not affect our coming to your place as contemplated in the proposition which was fully discussed. I am empowered to take the matter up with you. Can you come to Salem, N. C., and confer with me at once? I will be at home next week." There is nothing in this letter to justify the assumption that the building of the road in question was an

assured fact, and the decided weight of evidence is that Bowman read the letter to the crowd of bidders for their information, and made no statement inconsistent with its terms. Mr. Withers, the only one of the appellants who has testified in the case, says that he is unwilling to say positively that Bowman did not have the letter in his hand, while speaking, because there was a great crowd where Bowman was standing that often shut him off partially from view. Bowman himself, and his evidence is corroborated by others, says that he read the letter, and stated that a committee would go to North Carolina to confer with Mr. Fries on the subject, and that he hoped the branch road would be brought from Roanoke to Salem, and that its depot would be located on the lands of the development company.

The second representation relied on is the alleged statement that a hotel would be built on the lands of the company at a cost of $50,000. The evidence upon this subject, as well as the language of the alleged statement itself, clearly show that it was not the assertion of an existing fact, but the mere expression of an opinion that the company would build a hotel; and no doubt it would have done so if its hopes and expectations, like those of appellants, had not so soon turned to ashes.

The third representation relied on is the alleged statement that an electric railway would be built through the company's property, and that bond had been given to complete it within two years. As a matter of fact, a company had been organized, a charter obtained, and other steps taken towards building the road in question. The evidence is very conflicting, but tends strongly to support the view that Bowman did not say that bond had been given to complete the road in two years. It further appears that appellants could hardly have been affected or influenced to make their purchase by this alleged statement, because long before the expiration of the two years they had given notice of their intended defences, and determination to refuse payment of their notes, for causes that existed anterior to the

time at which it is alleged the road was to be completed under the bond. Under such circumstances it can hardly be said that appellants are entitled to be released from the obligation of their purchase-money notes.

The fourth representation relied on is the alleged statement that certain other manufactories had been secured to be located on the property, and would be constructed at once. To the extent that this statement is shown to have been made, it is sustained by the facts appearing of record.

In regard to the allegation that Bowman declared that, unless the alleged representations were carried out, purchasers would not be required to pay the deferred instalments, it clearly appears that this statement was made in connection, alone, with certain paving that was contemplated; that, if that paving was not done, purchasers need not pay their deferred payments. The paving was done as promised, and all obligations of the company on that account fulfilled.

Upon this branch of the case we are of opinion that no such misrepresentations of fact are proven, as would, under the principles of law adverted to, entitle the appellants to the relief sought.

The notes involved in this controversy, together with the notes of a large number of other purchasers, were endorsed by the Salem Development Company to the Farmers' National Bank of Salem, Virginia, to secure about $21,000 of debt due to the Olean Cart Company. The appellants contend that it was error to decree the payment of the full amount of their notes without directing an account of the amount that was due to the appellee, A. Minor Wellman, executor, whose testator was assignee of the Olean Cart Company; and, further, that the lots embraced in the deeds of trust to secure the notes of appellants, and those of the other lot purchasers, should have been sold before decreeing a money payment by only four of the large number of debtors jointly liable.

The decree appealed from states that it appears from the

record that the amount due by the appellants is not sufficient to satisfy the debt due from the Salem Development Company to the appellee. The whole of the record is not before this court, and there is nothing in that portion of it which is before us to show the statement of the decree to be incorrect. The appellants owe their purchase money. If it is not all due to the appellee, any residue would be due to the Salem Development Company, and, as the parties are all before the court, appellants could not be benefited by an account, or prejudiced by a decree for the full amount due from them. Nor was there any reason to delay appellee in his money decree against appellants until the lots were sold. No equity exists between appellants and the other purchasers of lots. Each of the appellants was liable to judgment for the amount of their joint notes irrespective of the course pursued as to others who had bought lots. The appellee might release his claim against other purchasers, and appellants would not be prejudiced thereby, and could not complain.

Upon the whole case, we are of opinion that there is no error in the decree complained of, and it must be affirmed.

*Affirmed.*