Syllabus.

# Staunton.

## HICKS v. WYNN.

### September 20, 1923.

1. DEEDS—*Contracts—Fraud—Representations as to Facts or Opinions.*—A misrepresentation which will avoid a deed or a contract for the sale of real estate must be a statement of a fact, and not merely an opinion. It must have been made for the purpose of inducing the deed or the contract, and relied upon as a fact by the party complaining, and must have been material and untrue.

2. DEEDS—*Contracts—Fraud—Representations as to Facts or Opinions— Reliance on Representation.*—An expression of a mere opinion is not sufficient to avoid a contract, especially an opinion upon the interpretation of a written instrument which was equally accessible to both parties, and even the positive misrepresentation of a fact is not sufficient, if it appears that it was not relied on, and that the party alleged to have been defrauded thereby made an independent investigation of his own in order to ascertain the facts.

3. FRAUD AND DECEIT—*Presumption of Fraud—Allegation and Proof of Fraud.*—Men are ordinarily honest in their dealings with each other. Hence, fraud will not be presumed, but must be distinctly alleged and clearly proved by him who relies upon it as a ground of action or defense.

4. FRAUD AND DECEIT—*Representations as to Facts or Opinions—Deed Relinquishing Rights in Estate of an Ancestor—Case at Bar.*—In the instant case defendant contended that a deed from her to an aunt of any interest in her grandfather's estate was obtained by a false representation, to the effect that a deed of a tract of land to her mother was intended by her grandfather as her mother's full share of his estate.

   *Held:* That the allegation that the conveyance to defendant's mother was intended as her full share in her father's estate was not the representation of a fact, but a mere expression of opinion. It was not a representation that her grandfather had stated that it was to be in full of her share of his estate, but that such was the effect of his deed. If, however, it had been represented as a fact, it was supported by the testimony in the instant case.

5. FRAUD AND DECEIT—*Representations as to Facts or Opinions—Deed Relinquishes Rights in Estate of an Ancestor—Case at Bar.*—In the instant

case defendant contended that a deed from her to an. aunt of any interest in her grandfather's estate that she might have or claim was obtained by a false representation, to the effect that her grandfather by his will had given all his estate to her aunt and her children. This representation was made in good faith.

*Held:* That the representation was an expression of opinion on the legal effect of a document that was open to the inspection of defendant. Moreover, if it be construed to be a representation of a fact, it appeared from the evidence that the representation was not relied on.

6. COMPROMISE AND SETTLEMENT—*Family Settlements Favored in Equity.*— Compromise agreements are favored in equity, and this is especially true of family settlements of disputed claims, and they will not be set aside for fraud unless the fraud be proven by clear and convincing testimony.

7. DEEDS—*Fraud and Deceit—Relinquishment of Rights by Heir—Case at Bar.*—In the instant case defendant testified, that when she executed a deed relinquishing her rights in her grandfather's estate to an aunt, upon representations that her grandfather had conveyed a tract of land to her mother in full of her share in his estate, and that her grandfather had left a will giving to the aunt and her children all of his property, she had never read the deed from her grandfather to her mother, nor the will of her grandfather.

*Held:* That her failure to read the deed or will could not be charged to any act of commission or omission on the part of her aunt.

8. DEEDS—*Badges of Fraud—Failure of Grantor to Read Deed.*—The mere failure of a grantor to read a deed is not of itself a badge of fraud on the part of the grantee, when there is no impediment to such reading, and no inducement offered by the grantee to prevent the reading.

9. PRESUMPTIONS AND BURDEN OF PROOF—*Knowledge of the Law—Misrepresentation of the Law.*—The law is presumed to be equally within the knowledge of all parties, and a misrepresentation or misunderstanding of the law will not vitiate a contract, where there is no misunderstanding of the facts.

10. DEEDS—*Fraud and Deceit—Laches.*—In the instant case defendant alleged that a deed in which she was grantor was obtained by false representation and fraud on the part of the grantee and her husband.

*Held:* That under the testimony the allegation of fraud was not sustained, even if it would be considered after the lapse of twenty-four years without a reasonable suggestion of any cause to prevent an earlier discovery.

11. SPECIFIC PERFORMANCE—*Deeds—Commissioner to Execute Deed in Another State—Deed Defectively Acknowledged—Conflict of Laws—Case at Bar.*—In the instant case a deed purported to convey lands in both Virginia and Kentucky, but while the acknowledgment was sufficient for record in Virginia it was insufficient in Kentucky. As there was an implied covenant to give a record title, a court of equity, as in

other cases of specific performance, had power to enforce the performance of the covenant by compelling a proper acknowledgment of the original deed, or the execution of a new deed, where the equities of the case required it.   But the court had no power to appoint a commissioner and direct him to execute a deed upon the failure of the grantee.   The trial court had jurisdiction over the person of the grantee, but not over the lands in Kentucky.   It could compel the grantee to execute a conveyance, but could not confer any extra territorial power on its commissioner to make a conveyance of the Kentucky lands.

Appeal from a decree of the Circuit Court of Lee county.   Decree for complainant.   Defendant appeals.

*Amended and affirmed.*

The opinion states the case.

*Pennington & Pennington*, for the appellant.

*Pennington & Cridlin*, for the appellees.

BURKS, J., delivered the opinion of the court.

Dr. James G. Browning had two daughters, Caladonia C. A. and H. Retta.   By deed dated February 19, 1870, he conveyed to Caladonia C. A. for life, with remainder to her heirs, a tract of about 130 acres of land in Lee county, Virginia.   A few years thereafter Caladonia C. A. intermarried with Robert V. Vandeventer by whom she had one child, Lillie C., and died when the child was about eleven months old, leaving the said Lillie C. as her sole heir.   H. Retta intermarried with John C. Wynn, and she and her husband continued to live with her father until January, 1896, when both her father and mother died.   They had five children.   Dr. Browning left a will, made the day before his death, by

which he undertook to dispose of all of his real and personal estate. The parties differ as to the proper interpretation of this will, which is set forth in the margin.† Mrs. Wynn claimed that, by the deed to Caladonia, her father intended to give her all she was to have of his estate, and that the will gave to her and her children all of the real and personal estate owned by him at the time of his death. Lillie C., the appellant, claimed that the deed to her mother was a mere advancement, and that the will "at the most only creates a trust estate out of his properties, the rents, income and profits of which to be applied, used and expended 'in the interest of my beloved daughter, H. Retta Wynn and her children,'" and that there was an undisposed of estate after the completion of the trust created by the will in which she had an interest.

Dr. Browning died in January, 1896, and Lillie C. became of age in May, 1896. On the 17th day of

†"I, James G. Browning, of the county of Lee and State of Virginia, being of sound mind and of the age of sixty-eight years, and, knowing the uncertainty of life and the certainty of death, desire to state that in event, I should die of my present illness that the following statement rules shall be observed in the winding up of my estate both real and personal, after the settlement of all just and true claims that may come against my estate I desire that there shall be no sale of my property both real or personal, I desire that John C. Wynn, my son-in-law, shall have the exclusive right to collect all bonds, notes and accounts that may be due me, and shall further have the right to settle all just claims that may come against my estate or, in other words, he shall be my executor without bond being required of him, the said John C. Wynn. He shall further have the right to take charge of my money that may be in my possession. I desire that he shall rent the Fisher land and all lands lying in Poor Valley, and on the south side of the mountain for range. I mean my Virginia lands lying and being in the county of Lee, State of Virginia, or he shall have the right to use any moneys that may belong to me in buying cattle and grazing upon the above named lands and he shall have the right to pay for the fencing and keeping up of said lands out of the rents, profits, &c. of said lands. The lands owned by me known as the James Farmer land and Wash Smith land I want fenced up together in the same boundary all of which lying and being, the county of Harlan, State of Kentucky—I leave it optionary with my executor John C. Wynn whether or not he fence said lands—But it is my desire that said lands on the Kentucky side of the mountain shall be rented to the best advantage for stock range, or in event he can rent any of the above named lands to an advantage, he need not buy cattle to graze upon the said lands. He may inclose cliffs along the said mountain and leave open the cove for five or six months in each year. And may use his judgment about grazing cattle on the said lands.

"The Jonesville property better known as my home property, mill, &c., shall be run by my son-in-law John C. Wynn for and in the interest of my beloved daughter H. Retta Wynn and her children, also the above described lands shall be applied to the same rents, profits and moneys derived from said sources to be used and expended in the interests of my beloved daughter H. Retta Wynn and her children. The children of my beloved daughter H. Retta Wynn shall be schooled out of the proceeds of said lands, &c., and money to be retained in the bank to the sum of five hundred dollars all the time for twenty years. This given above my signature on this the 16th day of January, 1896.

"JAS. G. BROWNING.

"Attest:
    "N. B. Spencer, N. D.
             her
    "Kate X Brown, Col."
         mark.

November, 1896, Lillie C. and Mrs. Wynn and her husband entered into a contract, deed or agreement under seal, whereby, in consideration of certain designated items of tangible personal property and the sum of three hundred dollars, the said Lillie C. did "give, grant, bargain, sell, release and convey unto the said H. Retta Wynn and her heirs, any and all interest which she may have or claim, whether legal or equitable, absolute or contingent, vested or hereafter to accrue, in and to any and all of the real and personal estate of the said James G. Browning, deceased, either in Lee county, Virginia, or in Harlan county, Kentucky.". This deed was acknowledged and admitted to record as to all of the parties in Lee county, Virginia, on the day of its date, but has never been admitted to record in Kentucky. Dr. Browning owned a tract of 800 or 1,000 acres of mountain land in Kentucky, valuable chiefly for the timber thereon. This land the Wynns recently contracted to sell to a purchaser who declined to complete the sale until the deed aforesaid from Lillie C. was recorded in Kentucky. They offered the original deed from Lillie C. for record in Kentucky, but recordation was refused because the acknowledgment thereof did not conform to the laws of Kentucky. Lillie C. had in the meantime intermarried with W. F. Hicks, and a new deed was prepared uniting the husband and tendered to W. F. Hicks and Lillie C., his wife, and they were asked to sign and acknowledge the same, but declined to do so. Thereupon this suit was brought by H. Retta Wynn and her husband, John C. Wynn, against Lillie C. Hicks and her husband, W. F. Hicks, setting forth complainant's views of the facts, and praying, amongst other things, that a decree be entered "requiring said Lillie C. Hicks and W. F. Hicks to make, execute, acknowledge and deliver to the complainant, H. Retta Wynn, a deed con-

veying to her the real estate owned by James G. Browning, deceased, at the time of his death, situated in Harlan county, Kentucky, or such interest therein as they may have, as stated and set out in said original contract and deed; and, in case of their failure to do so, that the court appoint a commissioner to make such conveyance on their behalf." The case was dismissed on demurrer as to the defendant, W. F. Hicks, but, upon a full hearing on the merits, the relief prayed for was granted against Lillie C. Hicks, and from the decree granting such relief she appeals.

The chief defenses set up by Mrs. Hicks, by answer and cross-bill, were that (1) the deed of November 17, 1896, was obtained by false representations and fraud in telling her (a) that the deed to her mother in 1870 was intended by Dr. Browning as her full share of his estate, and (b) that Dr. Browning had by his will given all his estate to Mrs. Wynn and her children; and (2) that she had done all she had ever contracted to do, when she signed and delivered the deed; that she had never contracted to acknowledge the deed so that it could be recorded in Kentucky, and that the deed having been accepted, the complainants cannot after this great lapse of time, about twenty-four years, compel her to make another deed, or acknowledge the old deed so as to conform to the recording acts of the State of Kentucky. Respondent also relied upon the inadequacy of the consideration for the deed of November 17, 1896, and declared that even the whole of that had not been paid.

Mrs. Wynn and her husband, in their answer to the cross-bill, admit that, at or about the time the deed and contract of November 17, 1896, was executed, they did represent to the said Lillie C. that her grandfather intended that the land conveyed to her mother in 1870, as her full share in his estate, and that he had by his

will given all of his real and personal estate to the said'
H. Retta Wynn, but they deny that these were false ·
representations, and assert that such were the facts.
These representations are also set forth in the deed and
contract of November 17, 1896‡, but that document
also declares that the said Lillie C. "is now claiming and
threatening to put up a claim to a further part of the
said estate of the said James G. Browning, deceased,
and a claim for the rents from said Farley land," which
was the land conveyed to her mother, and the rents of '
which it was claimed the said James. G. had collected
for several years before his death.    Mrs. Wynn and her ·
husband did not admit the validity of these claims, but ·
wished to settle the question, and to this end agreed to ·
deliver to the said Lillie C. certain articles of personal
property and to pay her $300, and she, in consideration
thereof, did release her claims, and executed, acknowl- ·

‡"This deed and contract made and entered into this the 17th day of November, 1896, between ·
John C. Wynn and H. Retta Wynn, his wife, *nee* Browning, parties of the first part, and Lilly C.
Vandeventer, only heir at law of Caledonia C. A. Vandeventer *nee* Browning, party of the second
part, all of the county of Lee and State of Virginia; Witnesseth, that whereas James G. Browning,
deceased, in his lifetime did convey by proper deed, dated on the 19th day of February, 1870, to
the said Caledonia C. A. Browning for and in consideration of his love for her as his daughter,
and which he intended as her full share and part of his estate, a certain tract or parcel of land lying
on Powell's river, in Lee county, Virginia, known as the homestead of William Farley, the metes,
bounds and description of said land, and the provisions for the estates which the beneficiaries ac-
quire, are fully set out in said deed, and whereas the said Caledonia C. A. Browning afterwards ·
intermarried with one R. B. Vandeventer, and after giving birth to one child, to-wit, said Lilly
C. Vandeventer, departed this life, intestate, and by this death the said Lilly C. Vandeventer
inherited the said tract of land and she is now the sole owner thereof, and whereas the said James ·
G. Browning after making and publishing his last will and testament, which has been duly probated
and recorded, died the owner of both real and personal estate lying in Lee county, Virginia, and in
Harlan county, Kentucky, and by his said last will and testament devised and bequeathed to his ⁚
daughter, the said H. Retta Wynn, and to her children, all of his said real and personal estate, but
notwithstanding this fact the said Lilly C. Vandeventer is now claiming and threatening to put
up a claim to a further part of the said estate of the said James G. Browning, deceased, and a claim
for the rents from the said Farley land, but the said John C. Wynn and H. Retta Wynn, his wife,
not recognizing or admitted the justness or validity of such claims, do as a gratuity, agree to turn ·
over and give to the said Lilly C. Vandeventer the following personal property, which belonged to ·
the said James G. Browning at the time of his death, to-wit, two beds and bedsteads, a lot of bed
clothing, a lot of dishes, knives and forks, spoons, glassware, one Davis sewing machine, one cow,
one sow and pigs, two shoats, one watch, and one table, and the said John C. Wynn as a further
gratuity, and out of his own means, do agree to give to the said Lilly C. Vandeventer the sum of '
three hundred dollars, to be paid to her one year from this date, and a note for that sum has this
day been executed for the same, bearing interest from date, now in consideration of the property
before mentioned and the execution of the said note, the said Lilly C. Vandeventer, doth by these
presents give, grant, bargain, sell, release and convey unto the said H. Retta Wynn and her heirs ·
any and all interest which she may have or claim whether legal or equitable, absolute or contin-
gent, vested or hereafter to accrue in and to any and all of the real and personal estate of the said
James G. Browning, deceased, either in Lee county, Virginia, or in Harlan county, Kentucky.
Witness the following signatures and seals the day and year first above written.   Above interlinea-
tions made before signing.

"J. C. WYNN.                                    [SEAL].
"H. RETTA WYNN.                           [SEAL].
"LILLY C. VANDEVENTER.            [SEAL]."·

edged and delivered the said deed and contract of November 17, 1896. The $300 was paid and all of the said personal property delivered to the said Lillie C. except a few insignificant articles of household furniture which Wynn and his wife say were never called for and which they are ready and willing to deliver at any time.

[1, 2] A misrepresentation which will avoid a deed or a contract for the sale of real estate must be a statement of a fact, and not merely an opinion. It must have been made for the purpose of inducing the deed or the contract, and relied upon as a fact by the party complaining, and must have been material and untrue. An expression of a mere opinion is not sufficient to avoid a contract, especially an opinion upon the interpretation of a written instrument which was equally accessible to both parties, and even the positive misrepresentation of a fact is not sufficient, if it appears that it was not relied on, and that the party alleged to have been defrauded thereby made an independent investigation of his own in order to ascertain the facts. *Max Meadows L. & I. Co.* v. *Brady*, 92 Va. 77, 22 S. E. 845; *Watkins* v. *West Wytheville L. Co.*, 92 Va. 1, 22 S. E. 554; *Dudley* v. *Minor*, 100 Va. 728, 42 S. E. 870; *West End Co.* v. *Claiborne*, 97 Va. 734, 34 S. E. 900; *Hawkins* v. *Edwards*, 117 Va. 311, 84 S. E. 654.

[3] Men are ordinarily honest in their dealings with each other. Hence, fraud will not be presumed, but must be distinctly alleged and clearly proved by him who relies upon it as a ground of action or defense. *Hutcheson* v. *Savings Bank*, 129 Va. 281, 105 S. E. 677; *Cyphers* v. *Dingus*, 130 Va. 721, 108 S. E. 565.

[4, 5] The allegation that the conveyance by Dr. Browning to Lillie C.'s mother was intended as her full share in her father's estate was not the representation of

7

a fact, but a mere expression of opinion.    It was not a representation that Dr. Browning had stated that it was to be in full of her share of his estate, but that such was the effect of his deed.    If, however, it had been represented as a fact, it is supported by the testimony of both Wynn and his wife, who testify that Dr. Browning had repeatedly so stated to them.    This testimony is opposed only by the testimony of Lillie C. that Dr. Browning had told her that he intended that she should have the mill, which is a part of the home tract and was not given to her by the will.    The will itself is a contradiction of the claim.

As to the representation that Dr. Browning had by his will given all of his real and personal estate to Mrs. Wynn and her children, it is manifest that this was their interpretation of the language of the will, and that the representation was made in perfect good faith, both orally and in writing.    It was an expression of opinion on the legal effect of a document that was open to the inspection of the said Lillie C.    Moreover, if it be construed to be a representation of a fact, the representation was not relied on.    The father of Lillie C., testifying in her behalf, states that he consulted a lawyer of distinction as to the will, and that he said the will "was not worth the paper it was written on;" that he so advised his daughter, and that he called upon Mr. Wynn to turn over a part of the estate to his daughter. Lillie C., testifying in her own behalf, also says: "My father came in one evening and told me my uncle wanted a settlement with me and said he would give me $300, and the other things mentioned, and I cried and said I would not do anything about it and he said he would not have anything more to do with it.    He said Mr. Wynn would have a settlement at my expense.    I did not have any money and I did not know what else to do."

[6] It was after these events that the deed of November 17, 1896, was executed.   Not only does this deed recite that Lillie C. was setting up claims against the estate of her grandfather, Dr. Browning, but the fact that Wynn and his wife were paying a valuable consideration for a release and conveyance from her is evidence of that fact.   The deed of November 17, 1896, on its face appears to be a compromise and adjustment of a disputed claim.   It is said that compromise agreements are favored in equity, and this is especially true of family settlements of disputed claims, and that they will not be set aside for fraud unless the fraud be proved "by clear and convincing testimony." *Cary* v. *Harris*, 120 Va. 252, 255, 91 S. E. 166, 167; 12 Corpus Juris 351.

[7, 8] Mrs. Hicks (Lillie C.) testified that when she executed the deed of November 17, 1896, she had never read the deed from her grandfather to her mother, nor the will of her grandfather, but her failure to do so cannot be charged to any act of commission or omission on the part of Mrs. Wynn or her husband.   She also testified that she executed the deed of November 17, 1896, without reading it, or hearing it read.   In this she is contradicted by both Wynn and his wife.   Neither the attorney who drew the deed, nor the clerk who took the acknowledgment, both of whom were said by John C. Wynn to have read the deed to Lillie C. was examined as a witness in the case.   Why, it does not appear.   But the mere failure of a grantor to read a deed is not of itself a badge of fraud on the part of the grantee, when there is no impediment to such reading, and no inducement offered by the grantee to prevent the reading.

In *Upton* v. *Tribilcock*, 91 U. S. 45, 50, 23 L. Ed. 203, it is said: "It will not do for a man to enter into a contract, and, when called upon to respond to its obliga-

tions, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission. *Jackson* v. *Croy*, 12 Johns, 427; *Leis* v. *Stubbs*, 6 Watts 48; *Farly* v. *Bryant*, 32 Me. 474; *Coffing* v. *Taylor*, 16 Ill. 457; *Stapylton* v. *Scott*, 13 Ves. 427; *Alvanly* v. *Kinnaid*, 2 Mac. & G. 7, 29 Beav. 490.

[9] "That a misrepresentation or misunderstanding of the law will not vitiate a contract, where there is no misunderstanding of the facts, is well settled.

"In *Fish* v. *Clelland*, 33 Ill. 243, the principle is expressed in these words: 'A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; and if he does so it is his folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be decided by ordinary vigilance and attention. It is an opinion in regard to the law, and is always understood as such.' See *Star* v. *Bennett*, 5 Hill 303; *Lewis* v. *Jones*, 4 B. C. 506; *Rashall* v. *Ford*, Law Rep. 2 Eq. 750.

"The law is presumed to be equally within the knowledge of all parties."

[10] We concur with the trial court that the allegation of false representation and fraud on the part of Mrs. Wynn and her husband has not been sustained, even if it would be considered after the lapse of twenty-four years without a reasonable suggestion of any cause to prevent an earlier discovery. Cf. *Hagan* v. *Taylor*, 110 Va. 9, 65 S. E. 487.

[11] The language of the deed of November 17,

1896, leaves no room for doubt that Lillie C. Vande-
venter (now Mrs. Hicks) intended to convey and re-
lease to Mrs. Wynn and her heirs every kind of interest
in or claim upon the estate, real and personal, of James
C. Browning "either in Lee county, Virginia, or in Har-
lan county, Kentucky." There is no evidence of any in-
tention to give any warranty of the title conveyed, or to
measure the quantity or quality of the estate conveyed,
but plainly she intended to transfer to the grantee
whatever estate she had and to do so effectually, so
that neither she nor anyone claiming through her could
ever thereafter assert title to the interest or estate con-
veyed. That she intended that the title should be
shown of record is manifest from the fact that she ac-
knowledged the deed in such manner as to render it
admissible to record in Virginia. That was the purpose
of the acknowledgment. To say that she acknowledged
so that it could be recorded in Virginia but not in Ken-
tucky would not only impute to her bad faith and fraud,
but also a knowledge of the recording acts of Kentucky
hardly attributable to a country girl who had only
passed the seventh grade of the public schools of the
county. The defect in the acknowledgment is attributa-
ble to the form adopted by the officer taking it rather
than to the character of the act of the grantor. The record
discloses nothing to indicate that the grantor did not
intend that the deed should be recorded in Kentucky as
well as in Virginia. Upon the facts of the case, we are
of opinion that there was an implied covenant on the
part of the grantor to acknowledge the deed in such
manner as would make it recordable in Kentucky as well
as in Virginia. But she has refused to do so, and the
trial court entered a decree requiring her to execute,
acknowledge and file in the papers in the cause a proper
deed of conveyance of the Kentucky lands to the com-

plainant, H. Retta Wynn, and providing that, if she failed to do so for thirty days, a commissioner appointed by the court should execute the deed on her behalf. The trial court had jurisdiction over the person of Mrs. Hicks, but none over the lands in Kentucky. It could compel her to execute a conveyance, but could not confer any extra-territorial power on its commissioner to make such conveyance. *Fall* v. *Eastin,* 215 U. S. 1, 30 Sup. Ct. 3, 54 L. Ed. 65, 23 L. R. A. (N. S.) 924; 17 Ann. Cas. 853; *Corbett* v. *Nutt,* 10 Wall. 464, 19 L. Ed. 976; *Great Western Mining Co.* v. *Harris,* 198 U. S. 561, 25 Sup. Ct. 770, 49 L. Ed. 1163; *Poindexter* v. *Burwell,* 82 Va. 507; *Gibson* v. *Burgess,* 82 Va. 650; *Wimer* v. *Wimer,* 82 Va. 890, 901, 5 S. E. 536, 3 Am. St. Rep. 126; *Hotchkiss* v. *Middlekauf,* 96 Va. 549, 32 S. E. 36, 43 L. R. A. 806; *Vaught* v. *Meador,* 99 Va. 569, 574, 39 S. E. 225, 86 Am. St. Rep. 908. So much of the decree, therefore, as appoints a commissioner and directs him to execute the deed is erroneous. Whether or not the decree of the trial court, affirmed by this court, settling the rights of the parties over the matter in controversy, is entitled to, and will receive, full faith and credit in the courts of Kentucky, we are not called upon to decide. See *Williams* v. *Williams,* 83 r. 59, 162 Pac. 834, 836; *Vaught* v. *Neador, supra; Burnley* v. *Stephenson,* 24 Ohio St. 474, 15 Am. Rep. 621; *Mallette* v. *Scheerer,* 164 Wis. 415, 160 N. W. 182; 17 Mich. Law Rev. 527; *Bullock* v. *Bullock,* 52 N. J. Eq. 561; 30 Atl. 676, 27 L. R. A. 213, 46 Am. St. Rep. 528; *Fall* v. *Fall,* 72 Neb. 104, 106 N. W. 412, 113 N. W. 175, 121 Am. St. Rep. 767; *Fall* v. *Eastin, supra;* 33 Har. L. Rev. 423.

There was no defect or imperfection in the deed from Miss Vandeventer (now Mrs. Hicks) to Mrs. Wynn bearing date November 17, 1896, but the acknowledgment was insufficient to authorize its recordation in Kentucky. As there was an implied covenant to give

a record title, a court of equity, as in other cases of specific performance, has power to enforce the performance of the covenant by compelling a proper acknowledgment of the original deed, or the execution of a new deed, where, as here, the equities of the case require it. Of course, it would not grant the relief, if the deed had been obtained by fraud. *Leavitt* v. *Thornton,* 123 App. Div. 683, 108 N. Y. Supp. 162; *So. Missouri, etc., Co.* v. *Graves,* 182 Mo. 211, 81 S. W. 405; 1 Corpus Juris 826.

The decree of the circuit court will be amended by striking out the provision thereof appointing a commissioner and directing him to convey on behalf of Mrs. Hicks the Kentucky land to the complainant, Mrs. Wynn, and as amended, it will be affirmed.

*Amended and affirmed.*