# Richmond

## THE UNION CENTRAL LIFE INSURANCE COMPANY V. B. T. WILSON.

November 17, 1931.

Present, All the Justices.

The opinion states the case.

*White, Penn & Stuart,* for the plaintiff in error.

*B. T. Wilson* and *W. W. Bird,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

B. T. Wilson, an attorney at law, of Lebanon, Russell county, Virginia, defendant in error, instituted an attachment suit against The Union Central Life Insurance Company, of Cincinnati, Ohio, plaintiff in error, in the circuit court of the said county, to recover attorney's fees, commissions and expenses of sale, aggregating the sum of $2,140.00, with interest thereon from the 28th day of April, 1928. The parties will be referred to hereafter as plaintiff and defendant, the relation borne by them in the trial court.

It was alleged that the principal defendant was a foreign corporation, and had estate and debts owing to it within the said county. This estate was attached and levied upon, as was an indebtedness of $871.00 due the principal defendant by Mrs. Nannie E. Wilson, who was impleaded for the purpose as a party defendant.

The plaintiff's claim consisted of six separate items:

"(1) Attorney's fee in the chancery suit of *Elizabeth Combs* v. *Virginia A. Lambert, et als*, in the Circuit Court of Russell county ............................. $500.00
"(2) Attorney's fee in the chancery suit of *Virginia A. Lambert* v. *B. T. Wilson,* trustee, *et als*...................... 500.00
"(3) Trustee's commission on sale by him April 28, 1928, in foreclosing deed of trust............................. 550.00
"(4 & 5) Expenses of sale and fee for additional abstract..................... 90.00
"(6) Fees on the collection of $11,000.00 of amount due by notes which provided for ten per cent attorney's fee........ 500.00

"$2,140.00"

The verdict of the jury was for the plaintiff for the full amount claimed, with interest from the 28th day of April 1928.

The defense was that the first item was barred by the statute of limitations (Code 1919, section 5810). The suit which was the basis of the fee charged was ended by a final decree of January 15, 1924, and the evidence discloses that the motion of an appeal was abandoned on August 6, 1924. The present suit was instituted on the 28th day of September, 1929, thus the five year statutory period had elapsed between the date of the completion of the services of the plaintiff and the bringing of this suit. The plaintiff sought to counter this defense by reliance upon a part of the contents of a letter received by him from the defendant, the alleged effect being a waiver of its right to plead the statute. This letter of November 15, 1926, was in reply to a letter of the plaintiff to the defendant.

The portion of the letter appearing in the record as a part of the evidence and which we are discussing is as follows: "You say that there is some question as to the statute of limitations running against the right to collect your attorney fee in this case. I do not understand this as under the terms of our agreement your fee is not earned until the property is sold and your charges paid out of the proceeds of the sale."

It will be noted here for the purpose of making this reference understandable that in 1918 the defendant had made a loan of $12,000.00 to Charles A. Combs and wife which was secured by a deed of trust on two tracts of land in Russell county. Subsequently the Combses sold and conveyed these lands to Virginia Lambert, who assumed the payment of the said loan, which was evidenced by a series of notes aggregating the principal sum. Some time after the conveyance to Virginia Lambert a suit in chancery was instituted against her, The Union Central Life In-

surance Company and others, by Elizabeth Combs, asserting a life estate in the larger of the two tracts of land, as outstanding in her and superior in dignity to the rights of Virginia Lambert, and the other defendants. The defendant, The Union Central Life Insurance Company, employed the plaintiff to defend its interest in said suit. The deed of trust securing the defendant's loan contained a clause by which the mortgagors agreed to pay any reasonable attorney's fee and all expenses incident to any litigation involving the property, or incident to any sale of the property or the attorney's fee for collection of any note secured thereby collected without suit. The letter of the defendant engaging the plaintiff's services stated that he would be permitted to retain as full compensation therefor the attorney's fee recovered and collected in the suit and requested him to make claim for the fee as provided in the mortgage or deed of trust and the plaintiff replied that this fee arrangement was satisfactory to him. The life tenant was successful in establishing her claim as asserted and the suit went off the docket. No sale was had therein of any of the land embraced in the trust deed.

The quotation from the defendant's letter of November 15, 1926, which is urged by the plaintiff as constituting a waiver of its right to plead the statute against the plaintiff's fee of $500.00, item (1), arose out of the facts stated. We do not think the letter bears the legal effect sought to be given it.

██ A waiver must be clear and distinct. It cannot be said that the intent and purport of the words used were to waive the benefit of the statute, pleaded in an action instituted years afterward, and not contemplated by the writer at the time of the writing, however, the claim of the plaintiff. designated "item 1" for $500.00 was not barred by limitation and the trial court did not err in refusing to so instruct the jury.

■ It is perfectly clear that the plaintiff's fee, by the terms of the deed of trust, was secured by the grantors or mortgagors, on the lands embraced therein, but the provision was really for the benefit of the mortgagee, the defendant, in the immediate case. The plaintiff agreed that this should be the source of his fee but he had no right of action against the landowners on this account; this was only within the power of the defendant and its right to recover it was alive and existed as long as the deed of trust debt was in date, and, indeed, in grade and dignity of lien it was superior to the debt itself.

Our position as to this is fortified by the holding of this court in the case of *Smith's Ex'x* v. *Washington City, etc., Railroad Co.*, 33 Gratt. (74 Va.) 617, in which it was said in the syllabus:

■ "In the case of a claim secured by a mortgage, although the remedy by an action at law for the claim may be barred by the statute of limitations, the remedy under the mortgage will not be affected by any lapse of time short of the period sufficient to raise the presumption of payment."

It will be noted that the purchase price of lands sold in foreclosure proceedings by the trustee under the deed of trust, under the ruling of the above case, was charged with the payment of the plaintiff's fee, and the defendant cannot avail under the plea of the statute.

As to the items of the plaintiff's claim numbered (2) and (3) the defense was that the charges were exorbitant in each instance and the further defense was interposed to item (2) that plaintiff contracted to look to the grantors in the deed of trust and the makers of the notes secured thereby for his compensation and further as to the commissions on the sale represented by item (3) the plaintiff represented to the defendant that the real estate would sell for a sufficient sum to pay defendant's debt and all fees

and expenses and without such assurance the defendant could and would have protected itself by having another trustee to execute the trust, rather than the plaintiff, at much less cost; that the plaintiff was permitted to have himself substituted as trustee in the deed of trust and foreclose the same, upon the strength of his representations as to the value of the lands, when it would not otherwise have done so without a special agreement as to his commissions.

Concerning the reasonableness of the fee charged, evidence abundantly shows that the plaintiff is a lawyer of repute and ability and that he served the defendant in the capacity of its attorney in contested litigation extending over a period of at least six years, involving two chancery suits in which its very material interests were in jeopardy; that he collected and forwarded to the defendant fire insurance money to the extent of $2,000.00, which was applied on the indebtedness secured by the deed of trust (it does not appear, however, that there was any contest as to this); that in the course of this litigation he made at least two trips to Bluefield, W. Va. and one to Cincinnati, Ohio, on the defendant's business, paying his own expenses; that he conducted the proceedings for the substitution of a resident trustee; that he executed the trust by selling the lands embraced in the deed of trust, which he bid in for his client, the defendant, at the price of $11,000.00, that amount to be applied as part payment on the original sum loaned by it. All of this necessitated a voluminous correspondence which of itself entailed work considerable in extent and importance.

The testimony of local attorneys of experience and ability was convincingly to the effect that the fee charges made by the plaintiff were very reasonable. Indeed there was reliable testimony that a fee of $1,000.00 in each chancery suit would have been reasonable. For his professional

services covering this period the plaintiff was paid nothing except $100.00 which the defendant paid at the time of its receipt of the fire insurance money already referred to, and this was apparently a payment on the fee charged for services in the first suit which in the case in judgment was the subject of the plea of the statute of limitations. In our judgment there was ample justification for the finding of the jury on this phase of the matter.

■ Another defense to two of the larger fee items of the account was that the plaintiff contracted to look to the grantors in the deed of trust and the makers of the notes secured thereby for his compensation. This refers, of course, to the effect of the clause contained in the deed of trust heretofore referred to and quoted. Whatever that may be as a legal proposition, the evidence conclusively shows that both parties to this transaction dealt with each other upon the theory that the plaintiff's charges would be paid out of the proceeds of the sale of the lands.

On cross-examination the plaintiff was interrogated as follows:

"Q. You agreed that your fee would be paid under the provisions of that deed of trust?

"A. I agreed to that; but my understanding of that and the understanding of the defendant as well was, especially when the grantor, Mr. Combs, abandoned the property, and it became evident that the fee—all fees— would have to be collected out of the land itself. I understood, and they understood and so stated several times, that my fee would be paid out of the sale of the land. I have their letters to that effect if you want to see them . . . . . . . ."

The defendant put in evidence a letter written to it by the plaintiff dated October 16, 1924, and designated as "Defendant's Exhibit F," in which it was said in part:

."Another question involved in this matter is that of my fee in the suit, which under our contract is to be paid out

of the proceeds of the property under a provision to that effect in the trust deed and this is the only way I know of to collect it. I would suggest, therefore, that a trustee be substituted and that a sale be made of the property."

Concerning this letter, Mr. C. F. Wright, an official of the defendant company, and its only witness who was conversant with this transaction was cross-examined as follows:

"Q. You received that letter more than a year before the institution of this second suit, did you not?

"A. That was not a demand upon us for payment, though. I do not consider that a demand upon the company. He was just talking about his fee.

"Q. Mr. Wright, why was this mortgage foreclosed?

"A. Because Mr. Wilson requested us to foreclose it, so he could collect his fee."

Again with reference to a letter written by the defendant the same witness was examined:

"Q. Did you make the further statement in that letter: 'I do not understand this, as under the terms of our agreement your fee is not earned until the property is sold and your charges paid out of the proceeds of the sale'?

"A. Yes.

"Q. It doesn't say anything about any grantors in a deed of trust does it?

"A. It does not, but we understood that the land would be sold for enough to pay him and us.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

"Q. Your statements made in that letter of November 15, 1926, with reference to the statute of limitations and with reference to how this fee was to be paid were both correct according to your understanding at that time?

"A. So far as we know, yes."

The trial court's interpretation of this issue was in harmony with the construction and understanding of the parties themselves and it seems consonant with reason and

the very right of the matter. The grantors in the deed of trust and the makers of the notes secured thereby had abandoned their purchase and obligations thereunder and to have limited the plaintiff's source of compensation to them might have effected a gratuitous rendition of his services which is unthinkable.

In the light of the evidence we are unable to see the force of the contention and we think it is without merit.

■ Again the defendant urges that it should be absolved from liability for the payment of the commissions on the sale of the land because the plaintiff had represented that the land would sell for a sufficient amount to pay defendant's debt as well as all fees and expenses connected therewith, and that it was misled by this representation and thus prevented from bargaining for the performance of the services at a reduced price and from having the foreclosure proceedings executed by one of its employees from Cincinnati at a negligible expense. The loan was made by the defendant in 1918. At that time it had, as was its custom, a report of the value of the lands to be taken as security for the loan and which were embraced in the deed of trust. Two citizens of the vicinity, chosen, presumably, for their knowledge of the subject and their good judgment of land values, signed and made oath to a statement that the lands were worth approximately $40,000.00. Subsequently by letters the plaintiff assured the defendant in effect that its loan was safely secured—that the lands would sell for ample to pay the indebtedness and all charges and expenses. He, however, several years before the foreclosure, advised that the matter be terminated and closed by sale. He was rather insistent in this attitude declaring that it was the only way he knew to collect his fees without the defendant having to pay them. The defendant deferred the matter for very worthy sentimental reasons which it assigned.

Of course it is a matter of common knowledge that all

values suffered a distressing decline during these years but this fact and its extent could not be foredetermined. Human prescience has not yet reached that state of perfection.

In 1924, the plaintiff wrote to the defendant that the security at that time made its debt absolutely good and advised that a sale be made of the property. In 1926, he again wrote to the company that the property, if sold, would more than pay its debt. The plaintiff in his examination as a witness was asked to give some of the facts upon which he based his judgment of the value of the lands and his reply was:

"In the first place, this property was valued on a sworn appraisal at around $40,000.00. These men lived over there and knew the property better than I did. I don't known whether I had ever seen the home place or not. After that C. F. Lambert and a son-in-law bought the one tract for $15,000.00. E. R. Combs, who was clerk here and who came from over in that country, and Toad Kizer, as he is commonly known, and who was born and raised on the smaller tract, they bought the smaller tract and paid $13,000.00 in cash for it. I mentioned that fact to them. That's some of the things."

Thus the plaintiff was not without reliable data as a basis for his estimate of the value of the lands.

His declarations as to the value of the property were at most the expressions of his opinion and cannot be taken to afford a basis for the significance sought to be attached to them. This contention of the defendant is not sound. The following cases decided by this court are applicable:

"The doctrine is well settled," says Judge Harrison, for the court, in *Dudley* v. *Minor*, 100 Va. at page 731, 42 S. E. 870, 871, "that a misrepresentation, the falsity of which will afford a ground of action for damages, or a bill for the rescission of a contract, must be as to an existing fact. It must be an affirmative statement, or affirmation of some fact, in contradistinction to a mere expression of

opinion, which ordinarily is not presumed to deceive or mislead. The statements must have been made for the purpose of procuring the contract. They must be material. They must be untrue, and the party to whom they were made must have relied upon them, and been induced by them to enter into the contract."

In *Watkins* v. *West Wytheville Land Company*, 92 Va. at page 11, 22 S. E. 554, 556, Judge Harrison, for the court, says:

■ "A misrepresentation, the falsity of which will afford a ground of action for damages, must be as to an existing fact. It must be an affirmative statement or affirmation of some fact, in contradistinction to a mere expression of opinion, which ordinarily is not presumed to deceive or mislead. This is the general rule in all this class of cases, and we are unable to perceive that the case stated in these two pleas comes within any exception to the rule.

"When, for the purpose of obtaining a subscription, a promise was made that a branch road would be built, it was held that this promise was but the expression of an existing intention, which was liable to be changed, and was no defense. *McAllister* v. *Indianapolis R. R.*, 15 Ind. 11, cited in Cook on Stockholders, section 138. The pleas under consideration allege the mere expression of an opinion by the plaintiff, or its agents, that the improvements mentioned would be built. This is not such an affirmative statement or affirmation of fact as would make the plaintiff liable in damages, and was therefore no defense, and these two pleas were properly rejected as insufficient."

These cases are followed in *Hicks* v. *Wynn*, 137 Va. 193, 119 S. E. 133, 136.

■ The charge of $500.00 based on the ten per cent provision in the notes and a kindred provision in the deed of trust we do not think is equitable. No independent action or court proceeding was taken or prosecuted for the collection of the notes. The money realized on the defendant's

debt was procured through the foreclosure proceedings of the deed of trust by the plaintiff, as trustee, for which he was allowed commissions. We think the trial court erred in not sustaining defendant's objections to this item.

Finally the defendant urges that all this litigation grew out of the plaintiff's negligence in certifying the title to the land as clear, when it was in fact encumbered by the life estate of Elizabeth Combs, and therefore there should have been some diminution of the plaintiff's fees. The evidence is clear that the defendant knew of the defect in the title before the loan was made and it was advised by the plaintiff that it could be cured by having Mrs. Combs join in the trust deed subordinating her claim to that of the defendant. The deed was drawn in the office of the defendant and it was admitted that it was through its inadvertence that it was not so written. At any rate the plaintiff was employed to take care of the defendant's interests in all of these subsequent transactions and there was no suggestion of his negligence and its baneful effects upon his client's rights. If it had attributed such action to him it is hardly natural that it would have continued to seek his services and retain them even to his last act of finding a tenant for its lands acquired through his efforts.

It follows that we are not impressed by this contention.

The defendant in discussing its four assignments of error urges a variety of alleged errors said to have been committed by the trial court in the admission and rejection of evidence and in the granting and refusing of instructions. What we have said, we think, disposes of them without any further specific reference.

We affirm the action of the said court as to all the items except the last one of $500.00, as to which its action is reversed, and we enter judgment in favor of the plaintiff for the sum of $1,640.00, with interest from the 28th day of April, 1928.

*Reversed in part, affirmed in part, and judgment.*