## CIRCUIT COURT OF ROANOKE COUNTY

Carilion New River Valley
Medical Center

   v.

HKS, Inc., et al.

July 28, 2005

Case No. CL05000063-00

BY JUDGE ROBERT P. DOHERTY, JR.

Plaintiff medical center contracted with Defendant architect and Defendant general contractor for the construction of a medical center. A large portion of the medical center's exterior and selected portions of the interior wall coverings are comprised of concrete-formed cladding that is affixed to the exterior of the building by a mortar material through an adhesive bond. Plaintiff alleges that after construction, this cladding became prone to failure due to its being improperly affixed and must be replaced due to the health and safety hazard its failure has created. In addition, Plaintiff allegedly has discovered additional departures from the plans and specifications. Plaintiff sues Defendants under breach of contract.

Defendant architect demurs, arguing that, under the express language of the contract, Defendant architect was not responsible for the general contractor's work and that, under the language of their contract, Plaintiff medical center waived any right of action it might have against Defendant architect for failing to discover the alleged deficiencies of Defendant general contractor's work.

Section 1.2.4 of the contract establishes what duty Defendant architect had to Plaintiff medical center:

> The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Architect in writing to become generally familiar with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of such on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor.

Defendant architect admits that, under the contract, they had the duty to "endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor." However, Defendant architect alleges that section 1.2.5 of the contract explicitly provides no remedy or right of action by Plaintiff medical center for Defendant architect's breach of this duty:

> The Architect shall not have control or charge of and shall not be responsible for construction means, methods, techniques, sequences, or procedures, or for safety precautions and programs in connection with the Work, for the acts or omissions of the Contractor, Subcontractors, or any other persons performing any of the Work, or for the failure of any of them to carry out the Work in accordance with the Contract Documents.

There are no Virginia cases directly on point with respect to the specific language of the contractual sections in question. Instead, Defendant architect relies upon the principles found in *Moundsview Indep. Sch. Dist. No. 621 v. Buetow & Associates, Inc.*, 253 N.W.2d 836, 839 (Minn. 1977), for the proposition that "by the plain language of the contract, an architect is exculpated from any liability occasioned by the acts or omissions of a contractor." The contract provisions in *Moundsview* were similar to the contract provisions of the case at hand. The *Moundsview* court, announcing a view of the law contrary to that found in

Virginia, determined that the plaintiff contracted only for general supervision by the architect and could not gain the benefit of a more detailed full-time representative's inspection service. *Id.* at 839. In effect, the Minnesota Supreme Court found that the architect had entered into a contract to perform construction administration services for a fee, while at the same time waiving his obligation to perform those services properly. Clearly, that was not the intention of the contracting parties in the instant case.

No one unintentionally waives rights in Virginia. Waivers are clear, precise and distinct. Waivers use language that is unequivocal and not subject to alternative interpretation. *See Virginia Polytechnic Inst. v. Interactive Return Service, Inc.*, 267 Va. 642 (2004); *Stuarts Draft Shopping Ctr., L.P. v. S-D Associates*, 251 Va. 483 (1996); *Union Central Life Ins. v. Wilson*, 157 Va. 454 (1931). Plaintiff medical center did not waive its right in this contract to require competence from Defendant architect.

Plaintiff medical center relies upon the logic followed in *Hunt v. Ellisor & Tanner, Inc.*, 739 S.W.2d 933 (Tex. App. 1987). The contract provisions in the *Hunt* case are also similar to the contract provisions in the case at hand. The *Hunt* court specifically declined to follow *Moundsview. Id.* at 937. The *Hunt* court found that "the language said to be exculpatory constitutes nothing other than an agreement that the architect is not the insurer or guarantor of the general contractor's obligation to carry out the work in accordance with the contract document." *Id.* The *Hunt* court reached this conclusion because the architect generally had non-construction responsibility in the form of construction administration duties imposed that required them "to visit, to familiarize, to determine, to inform, and to endeavor to guard. In short, to provide information, not to make improvements upon the job site." The court held that the exculpatory language used in that contract was "to emphasize the architect's non-construction responsibility and to make certain that the architect 'will not be responsible for the [general] contractor's failure to carry out the work in accordance with the contract documents'." *Id.*

This Court agrees with and adopts the analysis in *Hunt*. The contract between Plaintiff medical center and Defendant architect required Defendant architect to "keep the Owner informed of the progress and quality of the work" as well as to "endeavor to guard the Owner against defects and deficiencies in the work of the Contractor." Defendant architect's duties were to observe, inspect, and inform. These duties are

similar to those found by the Virginia Supreme Court to be standard for architects who oversee construction projects. *See Nelson v. Commonwealth*, 235 Va. 228, 237 (1988). In our case, the pleadings are clear and specific. A jury issue exists as to whether Defendant architect violated its duties to observe the construction, to inspect the same, and to advise the Plaintiff medical center of any problems. Defendant architect's demurrer is therefore overruled.